UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RASHEE SHULER,

                          Petitioner,

        v.
                                                    9:15-CV-0399
                                                    (DNH)

DALE ARTUS, Superintendent, Wende C.F.,

                          Respondent.

_____

APPEARANCES:                          OF COUNSEL:

RASHEE SHULER
11-B-0541
Petitioner, pro se
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004

HON. ERIC T. SCHNEIDERMAN          PAUL B. LYONS, ESQ.
Attorney for Respondent            Ass't Attorney General
Office of the Attorney General
120 Broadway
New York, New York 10271

DAVID N. HURD
United States District Judge

**DECISION AND ORDER**

## I. <u>INTRODUCTION</u>

        Petitioner Rashee Shuler ("Shuler" or "petitioner") filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, dated May 30, 2013, challenging a judgment of

conviction of two counts of Attempted Robbery in the First Degree (N.Y. Penal

Law §§ 110.00, 160.10(1), (2)(b)) following a jury trial in Broome County Court.  Dkt. No. 1,

Petition ("Pet.").[1]

Shuler raises three grounds for habeas relief: (1) the verdict was against the weight of the evidence; (2) "mode of proceedings" errors relating to three jury notes received by the trial court during deliberations requiring a new trial; and (3) the trial court erred by adjudicating him a persistent violent felony offender. *Id.* at 2, 6-9.

Respondent opposes the petition. Dkt. No. 6, Answer; Dkt. No. 5, Memorandum of Law Supporting Response to Petition for Writ of Habeas Corpus ("Resp. Mem."); Dkt. No. 7-1, State Court Records ("SR"); Dkt. Nos. 7-2 and 7-3, Transcripts ("T").[2] Shuler filed a traverse. Dkt. No. 10, Traverse.

For the reasons that follow, Shuler's petition is denied and dismissed.

## II.  RELEVANT BACKGROUND

On November 21, 2008, a Broome County Grand Jury returned an indictment charging Shuler with two counts of Attempted Robbery in the Second Degree (N.Y. Penal Law §§ 20.00, 110.00, 160.10 (1), (2)(b)). Dkt. No. 7-1, Indictment at SR 42-45.

The attempted robbery charges stemmed from Shuler's involvement with Charles E. Williams, III, and DaQuan T. Harrison during the evening of October 14, 2008, and their attempt to rob Mark Marcello, a teenage marijuana dealer, while he was at his home. Dkt. No. 7-2, at T 143-151, 171-178; Dkt. No. 7-3, at T 12-14.

---

[1]  Shuler's petition was transferred from the Western District of New York to the Northern District of New York on May 2, 2015. The cited page numbers for the petition refer to those generated by the electronic filing system ("ECF").

[2]  The cited page numbers for the Answer (Dkt. No. 6), Respondent's Memorandum of Law (Dkt. No. 5), Transcripts (Dkt. Nos. 7-2 and 7-3), and Petitioner's Traverse (Dkt. No. 10) refer to those generated by the court's electronic filing system. The "SR" page numbers for the state court records filed at Docket Number 7-1 appear at the bottom center of each page.

The trial testimony established that after arriving at Marcello's house, Shuler, Williams, and Harrison approached Marcello and his friend, Wesley Sherwood, as they were smoking marijuana in the backyard. Dkt. No. 7-2, at T 145-149, 171-178; Dkt. No. 7-3, at T 14-16. Petitioner and Harrison proceeded to confront Marcello, while Williams displayed what appeared to be a handgun to Sherwood, even though it was, in fact, a pellet gun. *Id.* Marcello was able to get inside while his mother called the police. Dkt. No. 7-2, at T 149-152. Marcello identified petitioner as one of the attackers to a responding police officer. Petitioner was arrested at the scene and subsequently charged with two counts of attempted robbery. *Id.* at T 152; 195-197.

Williams and Harrison were also charged with two counts of attempted second-degree robbery. In addition, Harrison was charged with attempted burglary in the second degree (N.Y. Penal Law §§ 110.10, 140.25(2)), and Williams was charged with second-degree menacing (N.Y. Penal Law § 120.14(1)). Dkt. No. 7-1, Indictment at SR 42-45. Williams testified on behalf of the prosecution during Shuler's trial.

In exchange for his cooperation, Williams was sentenced as a Youthful Offender and received five years of probation. Dkt. No. 7-3, at T 17-19. The record does not reveal the status of the charges against Harrison. Additional facts are known to the parties and will be repeated only to the extent necessary to address petitioner's claims for habeas relief.

Shuler proceeded to trial before a jury in Broome County Court. Petitioner was convicted as charged and, on February 1, 2011, was sentenced as a persistent violent felony offender to serve two concurrent terms of twelve years to life. Dkt. No. 7-3, at T 170-17, 268269; Dkt. No. 7-1, Cert. of Conviction at SR 48.

On November 1, 2012, the Appellate Division, Third Department, unanimously

3

affirmed Shuler's conviction. The New York Court of Appeals denied leave to appeal on December 28, 2012. *People v. Shuler*, 100 A.D.3d 1041 (3rd Dep't 2012), *lv denied*, 20 N.Y.3d 988 (2012).

## III. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398, 1400 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, __ U.S.

__, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Further, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1096 (2013).

## B. <u>Ground One - Weight of the Evidence</u>

Shuler argues in Ground One of his petition that the verdict was against the weight of the evidence. Dkt. No. 1, Pet. at 2. Specifically, he claims the credible testimony did not support the jury's finding that he had the intent necessary to aid Harrison and Williams in the

attempted robbery due to his level of intoxication. *Id.* at 6-7.

Shuler raised his weight of the evidence claim on direct appeal and the Appellate Division rejected it, noting that "several witnesses testified that, although defendant smelled of alcohol or was under the influence, he did not appear to be inebriated or seemed only 'a little bit drunk.'" *Shuler*, 100 A.D.3d at 1042-43. To the extent there was testimony to the contrary, the Appellate Division held "the jury was free to assess the credibility of each witness," and their "verdict was not against the weight of the evidence." *Id.* at 1043.

More importantly, this argument is grounded in New York's Criminal Procedure Law and is therefore not cognizable on federal habeas review. CPL §470.15(5); *see Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *McKinnon v. Sup't Great Meadow Corr. Fac.*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); *Clairmont v. Smith,* No. 9:12-CV-1022 (GTS/TWD), 2015 WL 5512832 at *18 (N.D.N.Y. Sept. 16, 2015) (holding that petitioner's argument that the verdict was against the weight of the evidence "states a claim only under state law, [and] is not cognizable on habeas corpus."); *Lopez v. Sup't Five Points Corr. Fac.*, No. 1:14-CV-4615, 2015 WL 1300030 at *12 (S.D.N.Y. Mar. 23, 2015) (noting the petitioner's weight of the evidence claim "presents no federal question reviewable by a federal habeas court.").

In his reply papers, Shuler argues his weight of the evidence claim "is cognizable on Federal Habeas Review under the standards of *Jackson v. Virginia*, 443 U.S. 307." Dkt. No.

6

10, Traverse at 1.  Liberally construing this reply, petitioner appears to be equating his weight of the evidence claim with a claim that the evidence is legally insufficient.  For the reasons that follow, petitioner's weight claim will not construed as a sufficiency claim.

Generally speaking, a petitioner seeking federal habeas relief must raise all claims in state court prior to raising them in the habeas corpus petition, and he must "fairly present" each federal claim in the appropriate state court, "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1981)); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *Smith v. Duncan,* 411 F.3d 340, 349 (2d Cir. 2005).

Although "it is not necessary for a habeas petitioner to cite 'book and verse' of the Constitution," in order to properly raise and exhaust a federal claim in state court (*Daye v. Att. Gen. of State of New York*, 696 F.2d 186, 192 (2d Cir. 1982)), exhaustion nevertheless requires that the petitioner "'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2015)).

"In developing and refining the 'fairly present[ed]' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." *Smith v. Duncan,* 411 F.3d at 349 (quoting *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005)); *Duncan,* 513 U.S. at 366 (Because the state and federal

inquiries were "no more than somewhat similar" rather than "virtually identical," the petitioner did not fairly present his due process claim when he argued to the state appellate court that the trial court's failure to sustain an objection was a "miscarriage of justice.").

Although sufficiency and weight of the evidence claims are related, "each requires a discrete analysis." *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987). Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2152 (2012) (per curiam) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In contrast, an argument that the jury's verdict is against the weight of the evidence is grounded in New York's Criminal Procedure Law. N.Y. Crim. Proc. Law § 470.15(5). Even if all the elements of the offense are supported by some credible evidence, the state appellate court must examine the credible evidence further and determine whether a different finding would have been reasonable. *Bleakley*, 69 N.Y.2d at 495. If a different finding would not have been unreasonable, "then the appellate court must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony." *Id.* (internal quotation marks and citation omitted). The appellate court may set aside the verdict if it "appears that the trier of fact . . . failed to give the evidence the weight it should be accorded." *Id.* (citing CPL § 470.20(2)).

As the Second Circuit recently noted, New York's "weight-of-the-evidence claim requires more exacting review than an insufficiency claim, because it entails a weighing of

8

the evidence and an assessment of the credibility of the State's witnesses." *Parker v. Ercole*, 666 F3d 830, 833 (2d Cir. 2012) (citing *Bleakley*, 69 N.Y.2d at 495). In fact, "[t]he difference in standards is more than semantic; it can be outcome-dispositive." *Lopez,* 2015 WL 1300030 at *12 (citing cases holding the evidence was legally sufficient but reversed as against the weight of the evidence).

Recent cases which have examined the nature of the weight of the evidence and sufficiency claims have concluded that "a weight claim cannot stand in for a constitutional sufficiency claim when considering whether a habeas petitioner has exhausted state court remedies because the two claims are no more than somewhat similar." *Lopez v. Sup't Five Points Corr. Fac.*, No. 1:14-CV-4615, 2015 WL 1300030 at *16 (S.D.N.Y. Mar. 23, 2015); *see also Williams v. Marshall*, No. 1:09-CV-7411, 2011 WL 2175810 at *8-9 (S.D.N.Y. Mar. 30, 2011) (Even assuming petitioner plead a constitutional sufficiency claim in his petition, such claim was not exhausted in state court; raising a state law weight of the evidence claim did not "fairly present" the constitutional sufficiency claim in state court.) (citing *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006))*; Thomas v. Fischer*, No. 1:05-CV-3010, 2007 WL 1988273 at * 3 (S.D.N.Y. Jul. 6, 2007) (The petitioner "did not 'fairly present' a federal insufficiency claim when he relied on an 'against-the-weight-of-the-evidence' claim," because the standards are not "so similar" that by presenting one, the petitioner could be said to have "fairly presented" the other.) (quoting *Jackson v. Edwards*, 404 F.3d at 621);

In this case, Shuler did not raise a sufficiency claim in his direct appeal. Dkt. No. 7-1, Appellate Brief at SR 22-25. The Appellate Division construed petitioner's appeal as only seeking reversal of his conviction as against the weight of the evidence under New York Law,

and rejected it without any mention of the standards governing the sufficiency of the evidence. *Shuler*, 100 A.D.3d at 1042-1043. Based on petitioner's appellate brief, and the Appellate Division's analysis of his claim solely as one that the verdict was against the weight of the evidence, it is found that petitioner did not "fairly present" a legal sufficiency claim to the Appellate Division.[3] *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). Therefore, to the extent the habeas petition could be interpreted as raising a sufficiency claim, it would therefore be unexhausted. 28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii); *Baldwin*, 541 U.S. at 29; *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

Further, a sufficiency claim would also be procedurally defaulted because there is no remaining avenue by which Shuler could properly exhaust it. He cannot now file a direct appeal or leave application in order to exhaust them because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). The facts that would support a sufficiency claim were apparent on the record, and

_____

[3] In *Liberta v. Kelly* (839 F.2d 77, 80 n.1 (2d Cir. 1988)), the Second Circuit remarked in a footnote that "New York courts, when reviewing the evidence in support of a criminal conviction, have consistently adhered to a standard that is virtually identical to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319." Some courts have concluded, based in part on the *Liberta* footnote, that by raising a weight of the evidence claim, petitioners necessarily have raised a sufficiency claim. *See, e.g., Horne v. Perlman*, 433 F. Supp. 2d 292, 300 (W.D.N,Y. 2006); *Howie v. Phillips*, No. 1:03-CV-9757, 2004 WL 2073276 at *4 (S.D.N.Y. Sept. 17, 2004). More recently in *Parker v. Ercole*, 666 F.3d 830, 833 (2d Cir. 2012), the petitioner raised both a sufficiency claim and a weight claim on direct appeal. The Appellate Division ruled that the sufficiency claim was unpreserved and declined to review it in the interest of justice, and rejected the weight of the evidence claim on the merits. The Second Circuit noted that a weight claim "requires more exacting review than an insufficiency claim, because it entails a weighing of the evidence and an assessment of the credibility of the State's witnesses," and found that "to the extent the Appellate Division decided that Parker's conviction was not against the weight of the evidence, it necessarily decided that there was sufficient evidence to support the verdict." *Id.* But here, petitioner did not even hint to a sufficiency claim.

In *Wilson v. Heath*, 938 F. Supp. 2d 278, 290-91 (N.D.N.Y. 2013), this Court declined to deem a sufficiency of the evidence claim as unexhausted and procedurally defaulted because the Second Circuit in the *Liberta* footnote "suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes." The Court ruled that the weight of the evidence claim was not cognizable, and "to the extent petitioner's claim can be interpreted as challenging the sufficiency of the evidence, it also fail[ed]." *Id.* at 291. In this case, however, for the reasons set forth above, it is concluded that petitioner's papers were not sufficient to alert the Appellate Division of a possible sufficiency challenge.

"New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Id.* at 91 (citing CPL § 440.10 (2)(c); *see Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10 (2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas."); *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003) (applying CPL § 440.10 (2)(c) to claims raised for the first time in federal habeas petition).

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency." (citation omitted)).

To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, __U.S.__, 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson,* 501 U.S. 722, 753 (1991). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Here, Shuler makes no showing of cause, and no such showing can be discerned.

11

Instead, petitioner maintains that "failure to consider his claim will result in a miscarriage of justice." Dkt. No. 10, Traverse at 6 (citing *Coleman*, 501 U.S. at 748-750). "'The miscarriage of justice exception is concerned with actual as compared to legal innocence.'" *Calderon v. Thomspon*, 523 U.S. 538, 559 (1998). "[A] claim of actual innocense must be based on reliable evidence not presented at trial" and "[g]iven the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'" *Id.* (quoting *Schulp v. Delo*, 513 U.S. 298, 324 (1995)). Petitioner has not presented any new evidence that he is actually innocent of the crimes for which he was convicted, or that the failure to review his claim would result in a fundamental miscarriage of justice. *House,* 547 U.S. at 536-39; *Schlup,* 513 U.S. at 327. Therefore, to the extent petitioner's papers raise a sufficiency claim, the claim is unexhausted, procedurally defaulted, and will be dismissed.[4]

## C. <u>Ground Two - Procedural Errors Involving Jury Notes</u>

Shuler argues in Ground Two of his habeas petition that the trial court committed "mode of proceedings" errors in connection with three jury notes the court received during deliberations. Dkt. No. 1, Pet. at 8-9. Petitioner argues his constitutional rights were violated because "[t]he court did not place the contents of the jury note on the record" and otherwise did not provide all of the notes to defense counsel. *Id*. Petitioner also appears to argue that it was error to permit a court attendant to identify a juror who was referenced in a jury note. *Id.* at 9.

Shuler's claims with respect to the first and third jury notes are unexhausted and

---

[4] Assuming that the Appellate Division, when it rejected petitioner's weight of the evidence argument that the credible evidence failed to show intent, also concluded that the jury had sufficient evidence to find the essential elements of the offense beyond a reasonable doubt, that decision is supported by the record, and is not contrary to, or an unreasonable application of, *Jackson v. Virginia*, 442 U.S. at 319.

procedurally defaulted.  To the extent petitioner's claims regarding the fourth note are cognizable, the Appellate Division's decision was reasonable and not contrary to clearly established Supreme Court precedent.

### 1. <u>Relevant Facts</u>

During the course of deliberations, the jury sent several notes to the trial court requesting clarification and additional information.  For instance, the first note stated as follows:  "Could we have the testimony of whoever said where's your bud, where's your money?" and "Could we have the testimony of Charles Williams?"  Dkt. No. 7-1, at SR 183; Dkt. No. 7-3 at T 152-153.

After the jury was brought back into the courtroom, the trial court acknowledged that both counsel had reviewed the note, and then proceeded to instruct the court reporter to read back the testimony of Williams.  Dkt. No. 7-3, at T 152-153.  The trial court then asked the jury to clarify the first request in the note.  *Id.* at T 153-154.  Following a short deliberation, the jury sent back a second note indicating, "At this time we do not need the other testimony."  Dkt. No. 7-1, at SR 184.

A third note was received shortly thereafter requesting the trial court clarify whether Shuler could be found guilty of both counts of attempted robbery absent knowledge that Harrison was carrying a gun.  Dkt. No. 7-1, at SR 184; Dkt. No. 7-3, at T 159.  The trial court confirmed that counsel and the prosecutor had a copy of the note, and proceeded to consult with both parties to determine how to explain the relevant law to the jury.  Dkt. No. 7-3, at T 159-163.  The jury was then brought back into the courtroom and provided further instruction.  *Id.* at 163.

Finally, the jury sent a fourth note that stated:  "One of the jurors thinks she knows one

13

of the witnesses and she is not sure if this will effect her decision.  We would like to keep

deciding tomorrow." Dkt. No. 7-1, at SR 185; Dkt. No. 7-3, at T 163.  The trial court

instructed the court attendant to "ask whoever the subject is to come out, please?"  Dkt. No.

7-3, at T 163-164.  The court attendant complied and returned with the juror who was the

subject of the note.  *Id*. at T 164.  At that point, the trial court and counsel asked the juror a

series of questions to determine which witness she knew and to what extent, if any, her

familiarity with this witness might affect her ability to decide the case impartially.  *Id.* at T

164-168.  The juror responded that she thought she knew Brianna Sheppard, a defense

witness.  However, she stated that she only knew the witness as a "younger child" and did

not have a close relationship with her.  *Id.* at T 165-166.  The juror had not seen the

witnesses in fourteen or fifteen years.  *Id*. at 166.  The juror specifically affirmed that her

knowledge of the witness would not "affect [her] ability to be fair and impartial and objective

in this case."  *Id.* at 166.

Shortly after the juror returned to deliberate, a final note was sent out stating that the

jury had reached a verdict.  Dkt. No. 7-1, at SR 185.  Following the jury verdict, Shuler's

counsel argued that, given the short time between the fourth jury note and the verdict, the

juror who knew Brianna Sheppard must have been pressured into a guilty verdict.  Dkt. No.

7-3, at SR 174-175.

### 2.  Claims Regarding Juror Notes One and Three

Shuler claims that "certain mode of proceedings errors require a new trial," and

specifically identifies errors associated with the first, third, and fourth jury notes.  Dkt. No. 1,

Pet. at 2, 8-9.  However, on direct appeal, petitioner only argued his rights were violated

under New York Criminal Procedure Law § 310.30 in relation to the fourth jury note.  Dkt. No. 7-1, Appellate Brief, at SR 26.  Petitioner did not raise any issues – constitutional or otherwise – in relation to the first or third notes.  *See id.*  Because petitioner failed to present his claims challenging the first and third jury notes to any state court, they are unexhausted. 28 U.S.C. §2254 (b)(1)(A), (B)(I), (ii).

There is no remaining avenue by which Shuler could properly exhaust his challenges to the first and third jury notes in state court.  He cannot now file a direct appeal in order to exhaust them because he already litigated the one direct appeal to which he is entitled. *Aparicio*, 269 F.3d at 91.  The facts that would support these claims were apparent on the record, and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."  *Id.* at 91 (citing CPL § 440.10 (2)(c); *see Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10 (2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas."); *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003) (applying CPL §440.10 (2)(c) to claims raised for the first time in federal habeas petition).

As noted, procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent.  *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency." (citation omitted)).

15

If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (same).

Shuler does not argue, much less establish, cause for the default of these claims. Therefore, it need not be decided whether he suffered actual prejudice. *Carrier*, 477 U.S. at 496. Petitioner maintains that "failure to consider his claim will result in a miscarriage of justice." Dkt. No. 10, Traverse at 6 (citing *Coleman v. Thompson*, 501 U.S. at 748-750). However, petitioner has not presented any new evidence that he is actually innocent of the crimes for which he was convicted. Therefore, petitioner's claims with regard to the first and third jury notes are exhausted, procedurally defaulted, and will be dismissed.

### 3. Claims Regarding the Fourth Jury Note

With regard to the fourth jury note, Shuler argues the trial court erred by: (1) failing to place the contents of the jury note on the record; (2) failing to provide counsel with a copy of the jury note; and (3) directing a court attendant to identify the juror who was the subject of the note and requesting her presence before the trial court and counsel. Dkt. No. 1, Pet. at 2, 8-9.

Although Shuler raised similar arguments in his direct appeal, he relied exclusively on state law governing jury deliberations in support of his claim. *See* CPL §§ 310.10, 310.30. Petitioner only made a single passing reference to one Supreme Court case, *Snyder v. Massachusetts,* 291 U.S. 97, 105-106 (1934), to support his claim that CPL § 310.10 "must

16

be considered in connection with . . . defendant's constitutional right to be present during the delivery of jury instructions."  Dkt. No. 7-1, Appellate Brief, at 26.

There is no corollary requirement to CPL §§ 310.10 and 310.30 under federal law. Shuler's claim is therefore not cognizable on habeas review.  *See Jones v. Annucci*, No. 9:14-CV-00405 (JKS), 2015 WL 5038242 at * 20 (N.D.N.Y. Aug. 26, 2015) ("[A]ny alleged error in the court's handling of jury notes was solely a violation of state law [CPL § 310.30], beyond the purview of this Court, and not a constitutional violation.")*; Cornado v. Bellnier*, 1:10-CV-5265, 2012 WL 6644637 at *5 (S.D.N.Y. Sept. 20, 2012) adopted, 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012) *("*A claim premised on a violation of New York Criminal Procedure Law Section 310.30 does not allege a violation of a federally protected right."); *Davenport v. Bradt*, 560 F. Supp. 2d 313, 321 (W.D.N.Y. 2008) (petitioner's reliance on CPL § 310.30 failed to establish "that the court's handling of the jury note deprived him of a constitutional right").

Shuler's passing reference to a single Supreme Court case in his appellate brief does not warrant a different outcome. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996) ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."); *Cornado,* 2012 WL 6644637 at *6 (a petitioner's single passing reference to the Sixth and Fourteenth Amendments in his state appellate brief, without more, failed to raise a claim cognizable on federal habeas review).  "Consequently, any alleged error in the trial court's handling of [the fourth jury note] was solely a violation of state law, beyond the purview of this Court, and not a constitutional violation." *Jones*, 2015 WL 5038242 at *20.

17

Nevertheless, even construing Shuler's appeal and habeas petition broadly as asserting a violation of his "constitutional right to be present during the delivery of jury instructions," the Appellate Division's rejection of this claim was neither contrary to nor an unreasonable application of Supreme Court precedent. Specifically, the Appellate Division held as follows:

> Finally, we are unpersuaded by defendant's assertion that County Court committed one or more mode of proceedings errors in its response to a note from the jury during deliberations. County Court received a note from the jury stating, "one of the jurors thinks she knows one of the witnesses and she is not sure if this will effect her decision. We would like to keep deciding tomorrow." Upon receipt of this note, the court directed a court attendant to bring the subject juror into the courtroom, whereupon the juror was amply questioned by the court and counsel. It was not necessary for the court to actively supervise the court attendant while she 'perform[ed] [the] administerial duties assigned of identifying the particular juror involved and escorting that juror to the courtroom. (CPL 310.10[1]). Nor is there proof of any improper communication between the court attendant and the jury. Accordingly, defendant is not entitled to reversal of his convictions on this ground. Moreover, under the circumstances of this case, we are satisfied that defendant received meaningful notice of the precise contents of the jury's notes and an advance opportunity to suggest appropriate responses before County Court responded to the jury's inquiry.

*Shuler*, 100 A.D.3d at 1044-1045 (internal citations and quotations omitted).

Shuler cites no Supreme Court cases, and research has found none, holding that a trial court is required to either read jury notes in open court or to mark them as exhibits. Therefore, the Appellate Division's decision rejecting petitioner's argument that the trial court did not provide petitioner or his counsel notice of the content of the jury note was not contrary to or an unreasonable application of Supreme Court precedent.

Furthermore, the record shows Shuler's counsel thoroughly questioned the juror who was the subject of the jury note, and even quoted specific portions of the note that the trial

18

court had not identified in support of a post-verdict argument. Dkt. No. 7-3, at T 167-168, 174-176. As the Appellate Division held, "under the circumstances of this case, we are satisfied that [petitioner] received meaningful notice of the precise contents of the jury's notes and an advance opportunity to suggest appropriate responses before County Court responded to the jury's inquiry." *Shuler*, 100 A.D.3d at 1045.

Finally, there is no merit to Shuler's claim that his right to be present was violated when the trial court directed a court attendant to locate the juror who was the subject of the fourth jury note. Petitioner's presence would have been "useless" in accomplishing this ministerial task, and petitioner has never come forth with any proof that improper communications were exchanged between the court attendant and juror. *Snyder v. Massachusetts,* 291 U.S. at 106. The Appellate Division's rejection of this claim was reasonable, and not contrary to, clearly established Supreme Court precedent. *Id.* Ground Two is therefore denied and dismissed.

### D.  Ground Three - Adjudication as a Persistent Violent Felony Offender

Shuler argues in Ground Three of his petition, as he did on direct appeal, that the sentencing court erred in adjudicating him a persistent violent felony offender. Dkt. No. 1, Pet. at 8-9. Petitioner maintains the trial court improperly tolled the 10-year limitations period for certain periods he was incarcerated in order to adjudicate him a persistent violent felony offender, sentencing him to a minimum of 12 years to life.[5] *Id.* The Appellate Division

---

[5] Under New York Penal Law § 70.08, a persistent violent felony offender is subject to enhanced sentencing. To be adjudicated a persistent violent felony offender, the defendant convicted of a violent felony must have previously been subject to two or more predicate violent felony convictions. The prior convictions, however, must have occurred not more than 10 years before the commission of the current felony, excluding "any period of time during which the person was incarcerated for any reason between the time of commission of the previous felon[ies] and the time of commission of the present felony." Penal Law § 70.04(1)(b)(v).

rejected this argument, holding that:

> Inasmuch as the first violent felony conviction was 15 years and 119 days prior to defendant's commission of the instant offense . . . the People had the burden of proving that he was incarcerated for at least five years and 119 days so as to bring the lapse within 10 years. (*see* Penal Law § 70.04[1][b][v]).  Upon our review of the record – including, but not limited to, the transcripts of two evidentiary hearings – we find that the People demonstrated excludable periods of incarceration of approximately five years and 345 days, which was more than sufficient to sustain such burden.

*People v. Shuler*, 100 A.D.3d at 1044.

Shuler's claim is not cognizable on habeas review since the claim is grounded in state law.  As the Second Circuit has concluded, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[w]hether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law, not a question of fact."  *Saracina v. Artus*, 452 F. App'x 44, 46 (2d Cir. 2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Bidinost v. Colvin*, No. 9:14-CV-1080 (DNH), 2015 WL 5838472 at *6, n.1 (N.D.N.Y. Oct. 7, 2015) (even if the petition were timely, petitioner's claim that the trial court improperly convicted him as a "violent predicate felony offender" was not cognizable for habeas review); *Coons v. Superintendent*, No. 9:11-CV-1502 (NAM), 2014 WL 316757 at * 11 (N.D.N.Y. Jan. 28, 2014) (Petitioner's claim that his sentence was improperly enhanced was grounded in state-law and not cognizable on habeas review); *Gilbo v. Artus*, No. 9:10-CV-0455 (NAM), 2013 WL 160270 at *16 (N.D.N.Y. Jan. 15, 2013).  Accordingly, habeas review of the state courts' adjudication of petitioner as a persistent violent felony offender pursuant to New York's recidivist statute is unavailable and the claim is dismissed.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1.  The petition, Dkt. No. 1, is **DENIED AND DISMISSED**;

2.  No Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[6]

3.  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and

4.  The Clerk shall serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  February 19, 2016
       Utica, New York.

---

[6] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).